1
2
3          UNITED STATES DISTRICT COURT
4             DISTRICT OF NEVADA
5                    * * *
6   CHARLES ECKENRODE,                    Case No. 2:13-cv-00317-GMN-PAL
7                          Plaintiff,     **REPORT OF FINDINGS &
                                          RECOMMENDATION**
8       v.
                                          (Mtn for Default - Dkt. #9)
9   RUBIN & YATES, LLC,
10                        Defendant.

11         This matter is before the court on Plaintiff Charles Eckenrode's Motion for a Default

12  Judgment and Request for Attorney's Fees (Dkt. #9), filed September 9, 2013, which was

13  referred to the undersigned for a Report of Findings and Recommendation pursuant to 28 U.S.C.

14  § 636(b)(1)(B) and Local Rule IB 1-4.  The court has considered the Motion.  No response to the

15  Motion was filed, and the time for filing one has now run.

16                            **BACKGROUND**

17         Eckenrode filed his Complaint (Dkt. #1) on February 26, 2013, naming Rubin & Yates as

18  Defendant.  Count I alleges Rubin & Yates violated the Fair Debt Collection Practices Act

19  ("FDCPA"), 15 U.S.C. §§ 1692 et. seq., in attempting to collect a debt from Eckenrode.

20  Eckenrode seeks emotional distress damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory

21  damages under 15 U.S.C. § 1692k(a)(2)(A), punitive damages, and an award of attorney's fees

22  and costs under 15 U.S.C. § 1692(k).  Count II alleges a tort claim under Nevada law for

23  intrusion upon seclusion and revelation of private financial facts to a third party against Rubin &

24  Yates.  For this claim, Eckenrode seeks "an award of actual damages from Defendant for the

25  emotional stress suffered in an amount to be determined at trial."  Complaint (Dkt. #1) at ¶¶ 8-9.

26         Eckenrode alleges that Rubin & Yates committed "numerous violations of the FDCPA as

27  well as invasions of privacy" by committing "the following illegal acts giving rise to this action;

28  (1) continually harassing Plaintiff; (2) engaging in a series of deceptive practices;

                                      1

(3) misrepresenting the amount of Eckenrode's debt, (4) threatening to garnish Eckenrode's wages without the legal ability or intent to do so; (5) demanding a sum of payment higher than the original contract amount, (6) threatening to sue Eckenrode for an amount higher than the original debt without the legal ability or intent to do so, and (7) intruding upon Eckenrode's seclusion."  Complaint at ¶¶ 4-6.

The Clerk of Court issued Summons (Dkt. #4) on February 26, 2013  The Summons was returned executed on April 29, 2013, indicating service of process was made on Rubin & Yates on March 25, 2013.  *See* Summons Returned Executed (Dkt. #6).  Rubin & Yates did not file a responsive pleading, and the Clerk of Court entered default against it on August 16, 2013, at Eckenrode's request.  *See* Clerk's Entry of Default (Dkt. #8).  Eckenrode now seeks entry of default judgment against Rubin & Yates and requests statutory, punitive, actual damages, and attorney's fees and costs.

## DISCUSSION

### I.  Applicable Law & Analysis.

#### A.  Adequacy of Service of Process.

As a preliminary matter, the court must determine whether the service of process was adequate.  A federal court does not have jurisdiction over a defendant unless the defendant has been properly served. *See Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.,* 840 F.2d 685, 688 (9th Cir. 1988).  Federal Rule of Civil Procedure 4 governs service of process in a federal action. According to the rule, an individual may be served by "following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  In addition, an individual may be served by delivering a copy of the summons and complaint to the individual personally, leaving a copy of each at the individual's home, or delivering a copy of each to an agent authorized to receive service of process.  Fed. R. Civ. P. 4(e)(2).  Here, the executed summons indicates that a process server served the complaint and summons on Rubin & Yates on March 25, 2013, by personal service on its owner, Cedirck Jordan, the person designated by law to accept service on Rubin & Yates' behalf.  Thus, service of process was adequate.

2

**B.     Default Judgment.**

Obtaining a default judgment is a two-step process under Rule 55.  *See Eitel v. McCool,* 782 F.2d 1470, 1471 (9th Cir. 1986); *see also* Fed. R. Civ. P. 55.  First, the clerk must enter the party's default.  Fed. R. Civ. P. 55(a).  The Clerk entered a default against Rubin & Yates on August 16, 2013.  *See* Clerk's Entry of Default (Dkt. #8).  Second, the party seeking default judgment must then petition the court for a default judgment.  *See* Fed. R. Civ. P. 55(b)(2).  The grant or denial of a motion for the entry of default judgment is within the discretion of the court. *See Lau Ah Yew v. Dulles,* 236 F.2d 415, 416 (9th Cir. 1956); *Warner Bros. Entm't Inc. v. Caridi,* 346 F. Supp. 2d 1068, 107 (C.D. Cal. 2004).  In determining whether to exercise its discretion to enter a default judgment, the court considers the following factors: (1) the possibility of prejudice to Plaintiff, (2) the merits of Plaintiff's substantive claim and the sufficiency of the complaint, (3) the sum of money at stake in the action, (4) the possibility of a dispute concerning material facts, (5) whether the default was due to excusable neglect, and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel,* 782 F.2d at 1471-72.

### 1.  Possibility of Prejudice to the Plaintiff.

The first factor favors default judgment where the plaintiff will suffer prejudice if default judgment is not entered. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 558 (D. Nev. 2002).  Simply delaying the resolution of the case is not prejudicial under this standard.  *See TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001).  The standard is whether plaintiff's ability to pursue the claim will be hindered. *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 462 (9th Cir. 1984)).  Rubin & Yates has failed to appear since being served on March 25, 2013.  As a result, Eckenrode is left without a remedy if default judgment is not entered in his favor.  Therefore, this factor weighs in favor of entry of a default judgment.

### 2.  Merits of the Plaintiff's Substantive Claim & Sufficiency of the Complaint.

The second and third factors favor default judgment if Plaintiff makes enough factual allegations to state a claim upon which relief can be granted, in accordance with Rule 8(a). *See*

*Eitel*, 782 F.2d at 1471; *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978).  All factual allegations in the complaint should be taken as true when evaluating this standard.  *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  The Complaint alleges that on February 8, 2013, Rubin & Yates told Eckenrode it was going to file papers to garnish his wages without the intent to do so.  Complaint at ¶ 13.  Eckenrode claims that Rubin & Yates told him if he did not pay the alleged $12,000 debt, it would sue him for $15,000—the amount of the debt plus costs and attorney's fees.  *Id.*

A creditor's statement that a consumer is liable for attorney's fees is a material misrepresentation when such an outcome is a legal impossibility.  *Tourgeman v. Collins Financial Services*, -- F.3d --, 2014 WL 2870174 at *9 (9th Cir. Jun. 25, 2014) (citing *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012)).  The so-called American Rule disallows an award of attorney fees absent a contractual or statutory exception.  *See Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 251 (2010).  The Complaint alleges Rubin & Yates' conduct violated 15 U.S.C. § 1692(f)(1) because it attempted to collect an amount not authorized by the agreement between it and Eckenrode.  Complaint at ¶ 27.  Accepting Eckenrode's allegations as true, he has stated a claim for a violation of the FDCPA because debt collectors are prohibited from threatening to take any action that cannot legally be taken or that is not intended to be taken.  *See* 15 U.S.C. § 1692(e)(5).  Because Eckenrode has pled sufficient factual allegations to support his claim for violation of the FDCPA, the second and third *Eitel* factors weigh in favor of entering default judgment.

### 3.  Sum of Money at Stake in the Action.

The fourth factor weighs against a default judgment when there is a substantial amount of money involved.  *See Eitel*, 782 F.2d at 1472.  In evaluating this factor, the court must compare the amount of money at stake to the seriousness of the defendant's conduct.  *See PepsiCo, Inc. v. Cal. Sec'y Cans,* 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  Eckenrode seeks $211,995.00. a substantial amount of money.  *See* Motion for Default Judgment (Dkt. #9) at 12:16-18.  Specifically, Eckenrode seeks statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; punitive damages in the amount of $100,000.00 for Rubin & Yates's

illegal invasion of his privacy; actual damages pursuant to 15 U.S.C. § 1692(a)(1) in the amount of $100,000 for emotional distress; and attorney's fees and costs in the amount of $10,995.00. *Id.*. Eckenrode provided a complaint and affidavit attesting to his emotional distress, but neither document cites specific and articulable facts that would tend to demonstrate his alleged injuries. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Eckenrode's statutory damages are capped at $1,000, and he provides no factual basis for punitive or emotional distress damages. Plaintiff cites to five cases as proof that his demand is reasonable in light of similar circumstances. However, none of the cases to which he cites are similar to this case because those cases involve repeated or egregious acts by the defendants. Eckenrode's Complaint, on the other hand, only alleges facts about one specific instance that occurred on February 8, 2013. For these reasons and others discussed below, the court finds actual damages, emotional distress, and punitive damages are not warranted. Eckenrode may be entitled to statutory damages and reasonable attorney's fees and costs, but for a much more modest award than he requests. This factor, therefore, weighs in favor of entry of a default judgment.

### 4. Possibility of a Dispute Concerning Material Facts.

The fifth factor weighs against a default judgment where there is a possibility of a dispute about material facts. *Eitel*, 782 F.2d at 1471-72. Rubin & Yates has not answered the Complaint, and nothing in the record indicates that any of the material facts are in dispute. Therefore, accepting the facts as stated in the Complaint as true, this factor weighs in favor of a default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth factor favors default judgment where default was not due to excusable neglect. *See Eitel*, 782 F.2d at 1472. A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (citing *Pena v. Seguros La Comercial, S.A.*, 770

F.2d 811, 815 (9th Cir. 1985), and *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986)). Eckenrode has demonstrated that his process server properly served Rubin & Yates with the Summons, Complaint, and this Motion for Default Judgment.  Rubin & Yates has received actual notice of this lawsuit and this Motion.  Its failure to appear is therefore willful, and this factor weighs in favor of entry of a default judgment.

### 6.   The Strong Policy Favoring Decisions on the Merits.

There is a strong policy in the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1472. However, the mere existence of Rule 55(b) indicates that this preference is not dispositive. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.    Eckenrode has no opportunity to try his case on the merits when Rubin & Yates has repeatedly failed to respond or otherwise defend itself in this action.  Therefore, this factor weighs in favor of entry of a default judgment.  After weighing all *Eitel* factors, this court will recommend entry of default judgment.

### C.    Damages.

The FDCPA requires the court awarding damages to assess the frequency and persistence of noncompliance with the statute by the debt collector, the nature of such noncompliance, and the extent to which the debt collector's noncompliance was intentional.   *See* 15 U.S.C. § 1692k(b)(2).    Here, Eckenrode seeks: (a) statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00, the statutory cap; (b) punitive damages in the amount of $100,000.00 for Rubin & Yates' illegal invasion of Eckenrode's privacy; (c) attorney's fees and costs in the amount of $10,995.00; and (d) actual damages pursuant to 15 U.S.C. § 1692(a)(1) in the amount of $100,000.00 for emotional distress.

### 1.   Statutory Damages.

The FDCPA provides that a plaintiff may recover statutory damages of up to $1,000.00 for noncompliance.  *See* 15 U.S.C. § 1692k(a)(1)-(2)(A).  One thousand dollars is the maximum award of damages per action, not per violation.  *See Harper v. Better Business Services, Inc.,* 961 F.2d 1561, 1564 (11th Cir.1992).  When considering the amount of statutory damages to award, a court may consider the nature of a defendant's noncompliance, the frequency of its

noncompliance, and whether the noncompliance was intentional.  *See* 15 U.S.C. § 1692k(b)(1).

The statute provides, in pertinent part:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of— in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.

15 U.S.C. § 1692k(a)(2)(A).

Section 1692(e) of the FDCPA provides that a debt collector may not use any false, deceptive, or misleading representation or means to collect any debt. *See* 15 U.S.C. § 1692(e).  A debt collector violates this rule if it threatens to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692(e)(5).  The Complaint that on February 8, 2013, Rubin & Yates told Eckenrode it was going to file papers to garnish his wages without the intent to do so.  Complaint at ¶ 13.  Eckenrode also alleges that Rubin & Yates told him if he did not pay the alleged $12,000 debt, it would sue him for $15,000 to recover the debt, along with court costs and attorney's fees.  *Id.*  As previously discussed, this conduct constitutes a violation of the FDCPA under 15 U.S.C. § 1692(f)(1) because Rubin & Yates attempted to collect an amount not authorized by the agreement between it and Eckenrode.  Accordingly, the Complaint states a claim for violation of the FDCPA, and an award of statutory damages not to exceed the $1,000.00 statutory cap is warranted.

## 2.  Punitive Damages.

Eckenrode seeks punitive damages in the amount of $100,000.00 for Rubin & Yates' unreasonable intrusion upon his seclusion and for revealing private financial information to a third party.  However, nowhere in the Complaint or the Motion does he provide any facts to substantiate a claim for revealing private financial information to a third party.  Eckenrode minimally attempts to allege a factual basis for an unreasonable intrusion upon his seclusion claim, thus the court will address this matter further.

To recover for the tort of intrusion, a plaintiff must prove the following elements: "(1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *Kuhn v. Account Control Technology*, 865 F.

Supp. 1443, 1448 (D. Nev. 1994) (citing *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.,* 111 Nev. 615 (Nev. 1995), *overruled on other grounds by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 113 Nev. 644 (Nev. 1997)).  Further, the Nevada Supreme Court has held that "in order to have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable." *Id.* (citing *M & R Investment Co. v. Mandarino*, 103 Nev. 711, 748 P.2d 488, 493 (Nev. 1987)).  Eckenrode alleges in conclusory fashion that Rubin & Yates repeatedly and unlawfully attempted to collect a debt and repeatedly and unlawfully disclosed information about this debt to third parties, without providing a specific factual basis to substantiate these claims.  Complaint at ¶ 31-38.

In addition, a defendant's actions must be highly offensive to a reasonable person.  *See PETA,* 867 P.2d at 1133 (internal citation omitted).  A court should consider the following factors in determining whether a particular action is highly offensive: "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.*  (citations omitted).  Eckenrode's Complaint alleges only one specific incident of an unlawful debt collection practice on February 8, 2013.  Eckenrode claims that Rubin & Yates threatened to file papers to garnish Eckenrode's wages.  Eckenrode also alleges Rubin & Yates threatened that if Eckenrode did not pay off the alleged $12,000 debt that it would sue Eckenrode for $15,000, for the debt plus costs and attorney's fees.  Complaint at ¶ 13.  Both Plaintiff's Complaint and his Declaration submitted with the Motion for Default Judgment allege multiple incidents in conclusory fashion.  The Complaint allegations and Declaration simply do not establish the degree of intrusion; the context, conduct, and circumstances surrounding the intrusion; Rubin & Yates' motives and objectives; the setting into which Rubin & Yates intruded; or the expectations of Eckenrode, whose privacy was invaded.  The court finds Eckenrode is not entitled to recover damages for intrusion upon seclusion or revelation of private financial facts to a third party.

Finally, in Nevada, punitive damages may be awarded where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or express or implied malice. *See* NRS 42.001. For punitive damages purposes, Nevada law defines: (i) "oppression" as despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person; (ii) "fraud" to be an intentional misrepresentation or concealment of a material fact with the intent to deprive another person of his or her rights or property; (iii) "malice, express or implied" to be despicable conduct which is engaged in with a conscious disregard of the rights or safety of others; and (iv) "conscious disregard" to mean knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences. *See 3685 San Fernando Lenders, LLC v. Compass USA SPE, LLC*, 802 F. Supp. 2d 1147, 1169 (D. Nev. 2011) (citing NRS 42.001). Eckenrode's conclusory allegation that Rubin & Yates "used deceptive, oppressive, unfair and unconscionable tactics to collect a debt from my family," is insufficient to establish that punitive damages are warranted by clear and convincing evidence. *See* Aff. of Charles Eckenrode at ¶ 7. The court will therefore recommend that Eckenrode's claim for punitive damages be denied.

## C.      Attorney's Fees and Costs.

The FDCPA allows for the recovery of an award for attorney's costs and fees. 15 U.S.C. § 1692k(a)(3). The statute provides, in pertinent part:

> (a) Amount of damages. Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title [15 U.S.C. §§ 1692 et seq.] with respect to any person is liable to such person in an amount equal to the sum of . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

The FDCPA is a fee shifting statute, and any debt collector who fails to comply with its provisions is liable for the costs a lawsuit to enforce liability as well as reasonable attorney's fees as determined by the court. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citing 15 U.S.C. § 1692k(a)(3)). An award of fees is mandatory under the FDCPA. *Id.* (citing *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995)). Courts must calculate awards

9

for attorney's fees using the lodestar method.  *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  The amount of the attorney's fees must be determined on the facts of each case.  *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  *Ferland*, 244 F.3d at 1149 n.4 (citation and internal quotation marks omitted).  In most cases, the lodestar figure is presumptively a reasonable fee award, the court may adjust the lodestar to account for other factors.  *Id.*

The two declarations of counsel do not address the factors set forth in Local Rule 54-16, which guides the analysis of the lodestar amount.  Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case;[1] (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  LR 54-16; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 (1976); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  When determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.  *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

Rate determinations in other cases in the District of Nevada have found hourly rates as much as $450 for a partner and $250 for an experienced associate to be the prevailing market rate in this forum.  *See, e.g., Marrocco v. Hill*, 291 F.R.D. 586 (D. Nev. 2013) (finding reasonable hourly rate in community of Nevada to be $375-$400 for partner with over thirty-five years of experience); *Aevoe Corp. v. Shenzhen Membrane Precise Electron, Ltd.*, 2012 WL

---

[1] This factor has been called into question by the Supreme Court's ruling in *City of Burlington v. Dague*, 505 U.S. 557, 561-564, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992).  *See also Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) (suggesting *Dague* casts doubt on the relevance of "undesirability" to the fee calculation).

2244262 (D. Nev. June 15, 2012) (finding $400 reasonable for a partner in a firm that concentrates on complex intellectual property litigation); *Agarwal v. Oregon Mut. Ins. Co.*, 2013 WL 5882710 (D. Nev. Oct. 30, 2013) (finding $300 per partner hour and $260 per associate hour reasonable); *Stephens Media LLC v. Citihealth, LLC*, 2013 WL 4045926 (D. Nev. Aug. 7, 2013) (finding rates between $400 and $185 to be reasonable); *In re USA Commercial Mortg. Co.*, 2013 WL 3944184 (D. Nev. July 30, 2013) (finding rates between $170 and $420 to be reasonable and $275 to $775 to be unreasonable); *Cervantes v. Emerald Cascade Restaurant Systems, Inc.*, 2013 WL 3878692 (D. Nev. July 25, 2013) (finding $450 to be excessive and reducing it to $275); *Plaza Bank v. Alan Green Family Trust*, 2013 U.S. Dist. LEXIS 58657 (D. Nev. April 24, 2013) (finding $425-$475 for partner time reasonable, but $275-$375 for associate time to be excessive based on the prevailing market rate and adjusting the amount to $250-$325).  Eckenrode's counsel George Haines and Brian M. Boyer seek to recover $10,995 in attorney's fees and costs.  These amounts are itemized as follows:

| Fees for Attorney George Haines, Esq. | | |
|---|---|---|
| Category | Time | Fees (Time x $450) |
| Phone Conversation with Client | 2.5 | $1,125 |
| Email Communications with Client | 3.1 | $1,395 |
| Client Meetings | 2.2 | $990 |
| Draft/File Complaint | 5.0 | $2,250 |
| Draft Motion for Default and Declaration | 3.0 | $1,350 |
| **TOTAL:** | **15.8** | **$7,110** |

| Fees for Attorney Brian M. Boyer, Esq. | | |
|---|---|---|
| Category | Time | Fees (Time x $325) |
| Review of File | 0.5 | $162.50 |
| Email Communications with Partners | 1.2 | $390 |
| Phone Calls to Opposing Counsel | 0.2 | $65 |
| Draft Motion for Default Judgment | 8.5 | $2,762.50 |
| **TOTAL:** | **10.4** | **$3,380** |

This case is not a matter of extreme complexity that requires rare expertise.  Therefore, based on the court's experience and knowledge of the prevailing rates in the community, the court will adjust the hourly rate for Haines to $300 and Boyer to $200.

In addition to evidence supporting the rates claimed, the party seeking an award of fees should submit evidence supporting the hours worked. *Hensley*, 461 U.S. at 433; *see also Jordan*, 815 F.2d at 1263. Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Hensley*, 461 U.S. at 433. The district court also should exclude from this initial fee calculation hours that were not reasonably expended. *Id.* at 433-34 (citation omitted). In other words, the court has discretion to "trim fat" from, or otherwise reduce, the number of hours claimed to have been spent on the case. *Edwards v. Nat'l Business Factors, Inc.*, 897 F. Supp. 458, 460 (D. Nev. 1995) (quotation omitted); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

Eckenrode requests $10,495 in attorney's fees and $505 in costs, based on 26.2 hours expended on client communications, drafting and filing the Complaint, and drafting and filing the Motion for Default Judgment and supporting exhibits. The court finds that the amount of fees and hourly rates requested are not reasonable or commensurate with the type of work performed and the level of skill required. The fees requested also reflect duplicative work performed by two lawyers on the same file. In addition, the court finds that the amount of fees requested for drafting a simple nine page form Complaint that alleges only one specific violation of the FDCPA and the hours expended communicating with the client are not reasonable. The court will allow the following fees and costs:

| Fees for Attorney George Haines, Esq., at rate of $300/hour | | |
|---|---|---|
| Category | Time | Fees |
| Draft and File Complaint | 2.5 | $750 |
| Client Communications | 2.6 | $780 |
| Draft and File Motion for Default Judgment | 1.5 | $450 |
| TOTAL: | 6.6 | $1980 |

| Fees for Attorney Brian M. Boyer, Esq., at rate of $200/hour | | |
|---|---|---|
| Category | Time | Fees |
| Draft and File Complaint | 2.6 | $520 |
| Draft and File Motion for Default Judgment | 4 | 800 |
| TOTAL: | 6.6 | $1320 |

In sum, the court will award a total of $3300.00 for attorney's fees, as outlined above, plus $505 in costs, for a total award of $3,805.00.

**D.**     **Actual Damages.**

The FDCPA allows for the recovery of actual damages.  15 U.S.C. § 1692k(a)(1).  The statute states, in pertinent part:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—(1) any actual damage sustained by such person as a result of such failure.

15 U.S.C. § 1692k(a)(1).

Under the FDCPA, actual damages can include damages for emotional distress caused by abusive debt collection practices.  *See, e.g.*, *Baker v. G. C. Services Corp.*, 677 F.2d 775, 780 (9th Cir. 1982) (actual damages that a plaintiff would be likely to incur would be for emotional distress caused by abusive debt collection practices).  However, how to interpret the actual damage language with respect to emotional distress is a controversial issue that has not yet been addressed by the Ninth Circuit.  *See Valero v. Bryant, LaFayette and Associates*, 2011 WL 1438436 at 3 (E.D. Cal. April 14, 2011) (citing *Bolton v. Pentagroup Financial Services, LLC*, 2009 WL 734038 at 10-11 (E.D. Cal. Mar. 16, 2009)).  Courts in this circuit have issued conflicting decisions regarding whether a plaintiff is required to prove actual damages under the FDCPA by showing he has suffered intentional infliction of emotional distress ("IIED") as defined by state tort law, or whether he can simply proffer evidence that he suffered symptoms from distress without establishing each element of the tort.  *See Riley v. Giguiere*, 631 F. Supp. 2d 1295 (E.D. Cal. 2009) (holding actual damages available for emotional distress under the FDCPA upon plaintiff's showing of actually suffering symptoms of distress); *Panahiasl v. Gurney*, 2007 WL 738642 (N.D. Cal. Mar. 8, 2007) (tort elements need not be proven so long as plaintiff has tendered evidence substantiating he suffered emotional distress as a result of FDCPA violation); *but see Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069 (E.D. Cal. 2007) (plaintiff must prove the elements of a claim for emotional distress under state tort law to recover for emotional distress under FDCPA).

13

Under Nevada law, Eckenrode must allege the following elements to establish a claim for IIED: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or extreme emotional distress; and (3) actual or proximate causation. *See Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981). For conduct to be extreme and outrageous, it must rise to a level outside all possible bounds of decency and be regarded as utterly intolerable in a civilized community. *See Maduike v. Agency Rent-A-Car*, 953 P. 2d 24, 26 (Nev. 1998); *see also Welder v. University of Southern Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (applying Nevada law). Nevada law also recognizes Negligent Infliction of Emotional Distress (NIED), and in order to state a claim a plaintiff must allege: (1) the defendant acted negligently, (2) either a physical impact or, in the absence of a physical impact, proof of serious emotional distress causing physical injury or illness, and (3) actual or proximate causation. *Barmettler v. Reno Air, Inc*., 956 P.2d 1382, 1386 (Nev. 1998).

Eckenrode alleges, in conclusory fashion, garden variety emotional distress. In his declaration, he avers, "As a direct consequence of Rubin & Yates' acts, practices, and conduct, [he] suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration, and embarrassment." Aff. of Charles Eckenrode at ¶ 8. Eckenrode asserts he contemplated filing bankruptcy as a result of Rubin & Yates' illegal conduct to stop harassing calls in the future. Complaint at ¶ 16. A plaintiff must demonstrate more than transitory symptoms of emotional distress because unsupported self-serving statements by a plaintiff are insufficient. *See Cabral v. Capitol Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS 8266, 3-6 (D. Nev. Jan. 22, 2014) (citing *Costa*, 634 F.Supp.2d at 1078). The conclusory Complaint allegations and self-serving affidavit statements are insufficient to establish an award for actual damages for emotional distress.

## II.     <u>Conclusion.</u>

Based upon the foregoing, the court finds that Eckenrode's service of process on Rubin & Yates was adequate. The Clerk of Court entered the default judgment against Rubin & Yates on August 16, 2013. Weighing all the *Eitel* factors, this court finds that entry of the default judgment is appropriate.

For the reasons stated above,

**IT IS RECOMMENDED:**

1.  Plaintiff's Motion for Default Judgment (Dkt. #9) be GRANTED IN PART so that Plaintiff is awarded $1,000.00 in statutory damages and $3,805.00 in attorney's fees and costs.

2.  The Motion for Default Judgment be DENIED in all other respects.

Dated this 25th day of July, 2014.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE